PER CURIAM.
DECISION
David Shaller (“Dr.Shaller”) appeals from the decision of the United States Court of Federal Claims, dismissing his complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted. Shaller v. United States, No. *465 97-534C, (Fed. Cl. June 28, 2002). We affirm.
BACKGROUND
On December 7, 1983, the Veterans Administration Medica Center (“VAMC”) appointed Dr. Shaller as Chief of the Rheumatology Section of the Veterans Administration Medical Center at Wilkes-Barre, Pennsylvania (‘WBMC”). One year later, Dr. Shaller was appointed as Chief Physician of WBMC’s Nursing Home Care Unit (“NHCU”). In March 1988, Dr. Shaller complained to the national office of the Veterans Administration (“VA”) about the transfer of a patient from the acute pulmonary care ward to the NHCU. A short time after Dr. Shaller’s complaint, the patient’s transfer was countermanded.
Dr. Shaller did not let the issue rest. In May 1988, Dr. Shaller filed a formal objection regarding the original transfer decision. A few months later, Dr. Shaller complained to the Regional Director of the VA. In July 1988, the Regional Director of the Office of Inspector General (“OIG”) received an anonymous letter charging Dr. Shaller with sexual misconduct. A Board of Investigation determined that the charges against Dr. Shaller were unsubstantiated. Dr. Shaller claimed that his complaints about mismanagement and malpractice led to the baseless sexual misconduct charges. He also claimed that in the ensuing investigation, his due process rights were violated as well as various VA internal procedures and regulations. These allegations led to further inquiries.
After the OIG referred Dr. Shaller to the Office of Special Counsel of the Merit Systems Protection Board (“Board”), the Board investigated Dr. Shaller’s complaint that the VA was retaliating against him because of his complaints of mismanagement and malpractice. In addition, the Haber Commission, a regional investigatory board, took up the issue of Dr. Shaller’s original complaint about the March 1988 patient transfer incident. The Haber Commission issued a report finding no wrongdoing by the VAMC and no shortcomings in Dr. Shaller’s professional competence and motivations regarding the incident, but recommended that he be transferred to another facility.
In November 1988, before the Haber Commission issued its finding. Dr. Shaller received a “low satisfactory” performance rating. In an apparent response to his performance rating, Dr. Shaller wrote a letter of complaint about VAMC management officials to the OIG in which he forwarded copies to various government entities and private parties. In an attachment to the letter, he included confidential patient information, such as names, social security numbers, diagnoses, and treatments. As a result of Dr. Shaller’s release of confidential patient records, in August 1989, the VA recommended that Dr. Shaller be discharged.
In October 1990, the disciplinary board upheld the VA’s recommendation to discharge Dr. Shaller. Subsequently, by letter dated November 7, 1990, the Chief Medical Director of the VA informed Dr. Shaller that his termination was to become effective as of November 13, 1990. After an unsuccessful appeal to the Secretary of the VA, Dr. Shaller’s discharge became a final agency action on January 17, 1991.
Since his discharge, Dr. Shaller has filed eight different actions in district court. All of the actions are related to his removal, which he alleged was in retaliation for his whistleblowing activities. In the various district court actions, Dr. Shaller alleged a variety of Constitutional, statutory, and regulatory violations and sought $750,000 in damages. In the last action *466 filed, the district court, after the United States filed a motion to dismiss for lack of jurisdiction, gave Dr. Shaller two options: 1) lower the requested damage amount to fall within limits set by the Little Tucker Act, 28 U.S.C. § 1346 (2000), or 2) consent to have his monetary claims transferred to the Court of Federal Claims. On June 6, 1997, the parties in the district court proceeding agreed to the transfer of the entire case to the Court of Federal Claims.
The Court of Federal Claims properly dismissed Dr. Shaller’s suit for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The Court of Federal Claims noted that the district court had jurisdiction pursuant to the Administrative Procedure Act (“APA”), 5 U.S.C. § 701 et. seq. (2000), over Dr. Shaller’s claims for declaratory and injunctive relief. Nevertheless, the Court of Federal Claims expressly declined to transfer the case back to the district court. Dr. Shaller appeals the judgment of the Court of Federal Claims. We have jurisdiction to review this case under 28 U.S.C. § 1295(a)(3) (2000).
DISCUSSION
We review de novo whether the Court of Federal Claims correctly dismissed Dr. Shaller’s claims for lack of subject matter jurisdiction and failure to state a claim for which relief may be granted. Ledford v. United States, 297 F.3d 1378, 1380 (Fed. Cir.2002).
On appeal, Dr. Shaller asserts that the Court of Federal Claims has jurisdiction to hear his case under various provisions of (1) the APA, 5 U.S.C. § 701 et. seq.; (2) 38 U.S.C. § 7462 (2000); (3) the Tucker Act, 28 U.S.C. § 1491 (2000); and (4) the Little Tucker Act, 28 U.S.C. § 1346 (2000). He further submits that the Court of Federal Claims may hear his case as a matter of public policy.
First, Dr. Shaller contends that there is jurisdiction in the Court of Federal Claims for his claims under the Tucker Act. The Tucker Act, 28 U.S.C. § 1491, confers jurisdiction to the Court of Federal Claims to “render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.” Id. at § 1491(a)(1). Therefore, the Tucker Act is only a jurisdictional statute; it does not, by itself, create a substantive right enforceable against the United States for money damages. See United States v. Testan, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In essence, in order to bring suit under the Tucker Act, the plaintiff must “assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.” James v. Caldera, 159 F.3d 573, 580 (Fed.Cir.1998). A money-mandating statute is one that “can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.” Khan v. United States, 201 F.3d 1375, 1378 (Fed.Cir.2000) (quoting Testan, 424 U.S. at 400).
Similarly, the Little Tucker Act confers jurisdiction to the district courts and the Court of Federal Claims over civil actions, not exceeding $10,000, founded upon the Constitution or an Act of Congress, a regulation, or a contract with the United States. 28 U.S.C. § 1346(a)(2). Like the Tucker Act, this statute is only jurisdictional and the party asserting such a claim must assert a separate money-mandating statute. Litzenberger v. United States, 89 F.3d 818, 820 (Fed.Cir.1996). In this case, to the extent Dr.Shaller could *467 plead a separate money-mandating statute on which to seek relief, he is precluded from relying on the Little Tucker Act as a jurisdictional basis because his monetary claim is for $750,000, and, thus, this statute does not apply.
Next, Dr. Shaller asserts that the Court of Federal Claims has jurisdiction to hear his suit under the APA, specifically 5 U.S.C. § 702. Section 702 provides, in relevant part, as follows:
A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.
Id. (emphasis added).
This statute expressly precludes actions seeking monetary damages. In addition, § 702 is not a jurisdictional statute and, as such, does not confer jurisdiction on the Court of Federal Claims. Crocker v. United States, 37 Fed. Cl. 191, 197 (1997), aff'd, 125 F.3d 1475 (Fed.Cir.1997) (“The Court of Federal Claims does not have general federal question jurisdiction, however, and it is well established that the APA is not an independent basis for this or any other court to exercise jurisdiction over claims for money.”). Therefore, Dr. Shaller may not rely on the APA as a statute on which to base jurisdiction in the Court of Federal Claims.
Even though the Court of Federal Claims did not have jurisdiction to hear Dr. Shallers’ claims, the court did acknowledge that there was jurisdiction, under the APA, in the district court. A decision by the Court of Federal Claims concerning whether to transfer a claim to another court pursuant to 28 U.S.C. § 1631 (2000) is discretionary and is reviewed on appeal for abuse of discretion. See LeBlanc v. United States, 50 F.3d 1025, 1031 (Fed.Cir. 1995). Here, the Court of Federal Claims declined to transfer the case back to the district court pursuant to 28 U.S.C. § 1631 because: (1) neither party requested such a transfer; (2) Dr. Shaller had already brought eight separate, unsuccessful suits before the district court on these issues; and (3) Dr. Shaller declined the option during the eighth lawsuit to keep the case in district court. Based on these factors, we do not find that the Court of Federal Claims abused its discretion when it declined to transfer the case back to the district court under 28 U.S.C. § 1631.
Next, even though “plaintiffs complaint appears to be convoluted, if not somewhat contradictory,” the Court of Federal Claims, pursuant to the Federal Rules of Civil Procedure, liberally construed Dr. Shaller’s complaint as relying on 38 U.S.C. § 7462[1] for his cause of action as well as the basis for jurisdiction. In any event, Dr. Shaller’s reliance on 38 U.S.C. § 7462 fails. With respect to jurisdiction, 38 U.S.C. § 4110 is not a money-mandating statute because it does not ex- *468 pressly or by implication, mention that a party is entitled to compensation for damages. Testan, 424 U.S. at 399-400. Thus, Dr. Shaller may not rely on 38 U.S.C. § 4110 as a money-mandating statute in order to bring a claim under the Tucker Act.
As for asserting a cause of action under 38 U.S.C. § 4110 (1991), the Court of Federal Claims did not err when it ruled that Dr. Shaller’s back pay claim under 5 U.S.C. § 5596 (2000) was statutorily precluded from judicial review in that court by 38 U.S.C. § 4110. In support of this holding, the Court of Federal Claims relied upon Khan, that such a claim is statutorily precluded. Dr. Khan was a VA physician who, like Dr. Shaller, was appointed under 38 U.S.C. § 4104(1) and who, like Dr. Shaller, filed a claim against the agency for back pay and reinstatement. Khan, 201 F.3d at 1379. This Court held that the Civil Service Reform Act (“CSRA”) does not apply to physicians appointed under section 4104(1). Id. at 1381-82. We further held that as such a physician, Dr. Khan had an exclusive grievance procedure under 38 U.S.C. § 7463. Id. at 1382. Moreover, under the mandate of United States v. Fausto, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), Dr. Khan could not bring his claims in the Court of Federal Claims. Khan, 201 F.3d at 1381-82. In Fausto, the Supreme Court held that the “deliberate exclusion of employees in respondent’s service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act.” 484 U.S. at 455.
Here, Dr. Shaller, like Dr. Khan, was a VA medical doctor appointed under 38 U.S.C. § 4104(1). In determining that Dr. Shaller had a similar exclusive remedy, the Court of Federal Claims stated that “[although Dr. Shaller, unlike Dr. Khan, is covered under the earlier provisions, for purposes of the controlling legal issues involved in these two cases, the grievance procedures set forth in section 4110[2] do not differ in any substantive manner from those set forth in sections 7462 and 7463”. We agree that because the grievance procedures set forth in sections 7462 (covering major adverse actions involving questions of professional conduct or competence) and 7463 (covering other major adverse actions) are similar, the Court of Federal Claims did not err in extending Khan to claims under section 7462. To that end, Dr. Shaller is precluded from any appeal to the Court of Federal Claims under the Tucker Act or from the agency to the Board under the CSRA for that matter.
For the first time in his reply brief, Dr. Shaller asserts that 38 U.S.C. §§ 7431-33, 7438 are money-mandating statutes. These sections, however, relate to the payment of “special pay” to currently employed physicians and dentists in the VHA. See 38 U.S.C. §§ 7431-33, 7438. In any event, because Dr. Shaller did not raise *469 these issues in the Court of Federal Claims, we need not address them.
Last, Dr. Shaller asserts that the Court of Federal Claims should hear his case as a matter of public policy. An allegation of violation of public policy is not enough to confer jurisdiction on the Court of Federal Claims. Le Blanc, 50 F.3d at 1029 n. 3 (Fed.Cir.1995).
In conclusion, we affirm the decision of the Court of Federal Claims dismissing Dr. Shaller’s petition for lack of jurisdiction and failure to state a claim upon which relief may be granted.

. On May 7, 1991, 38 U.S.C. §§ 4101-4618 were renumbered and recodified at 38 U.S.C. §§ 7401 et seq. Section 4110, in particular, relates to the disciplinary and grievance procedures of the VHA personnel. The events giving rise to plaintiff's claims occurred between March 1988 and January 1991, prior to Congress’ amendment and recodification of 38 U.S.C. § 4110. To that end, the Court of Federal claims applied the prior version of 38 U.S.C. § 4110.

. Section 4110 provides in relevant part:
(a) The Chief Medical Director, under regulations prescribed by the Administrator shall from time to time appoint boards to be known as disciplinary boards ... to determine, upon notice and fair hearing, charges of inaptitude, inefficiency, or misconduct of any person employed in a position provided in paragraph (1) of section 4104 of this title....
(d) A disciplinary board, when it its judgment changes are sustained, shall recommend to the Administrator suitable disciplinary action ... which shall include reprimand, suspension without pay, reduction in grade, and discharge.... The Administrator shall cause to be executed such action as the Administrator approves. The decision of the Administrator shall be final.